The judgment of the court was pronounced by
Rost, J.
This suit is brought for the abatementof a nuisance. The plaintiffs allege, that the Gas Company, whose establishment is located in the Second Municipality, are in the daily habit of throwing and pouring into the gutters, ditches, and drains in the rear of said municipality, large quantities of foetid, infectious and poisonous waters, produced by the process of the manufacture of gas by said company. That the said ditches and drains empty into the sources and head waters of the Bayou St. John, a natural drain and navigable stream, and in fact, taint and corrupt the waters of said bayou, destroying the fish, injuring the health of the inhabitants, and rendering said waters unfit to' be drank by horses and cattle. They pray for an injunction and for damages.
The defendants filed a general denial, and especially averred, that they were entitled by law to the use of the gutters, drains, and canals, as common sewers, *440 in discharging such waters as are necessarily produced or occasioned by the manufacture of gas. They prayed that the demand of the plaintiffs be dismissed. There was judgment for the defendants, that the injunction be dissolved, and that the plaintiffs pay the costs. The plaintiffs have appealed.
We understand the judgment to be in conformity with the prayer of the answer, and that the effect of it is simply to dissolve the injunction, and to dismiss the petition. It establishes the fact, that, at the time of its rendition, the defendants had created no nuisance of which the plaintiffs could complain, but is no bar to any other action for the abatement of nuisance which may hereafter arise from the same cause. Perhaps the more correct course would have been to try the case on its merits, and to ascertain the existence of the nuisance, before granting the injunction. But no damage has resulted from the course pursued. Ripon v. Hobart, 8 English Ch. Rep. 474. 2 Story, § 923, 924, 927. We cannot assent to the ground assumed in the answer, that the defendants are entitled by law, to the use of the gutters, drains, and canals of the city, in discharging all such waters as are produced or occasioned by the manufacture of gas. Those gutters, drains, and canals are all open, and it is indispensable to public health, that they should be kept clean, and free from bad smells, in the inhabited portion of the city. They are intended to carry off the waters that fall upon the land, and those that percolate through it. The right to use them for any other purpose is dependent upon the will of the local government, and rests upon the condition that no nuisance will result from the exercise of it.
The question involved in this controversy being purely one of fact, resting upon conflicting testimony, we do not feel ourselves at liberty to reverse the judgment of the district court. But, we deem it our duty to state, that deeply impressed with the importance of all matters relating to public health, we have, at the request of the counsel for the defendants, examined the gas-works with care, and that the present state of the discharges from the works, differs materially from that sworn to by the defendants’ witnesses, as existing at the time of the trial.
The superintendent of the works has testified, that in 1847, the tar discharged from the works was complained of to him as a nuisance ; and that, since that period, no tar has ever been discharged in the ditches. On our visits, at two different times, we found the tar and amoniacal water flowing in the gutter, through what is designated on the plan in the record, as “ the old overflow pipe from the tar-well.” We found that it had deposited large quantities of tar in the adjoining ditch, and that the effect of it was to give the water an intensely black color, and to destroy vegetable and animal life, Had these facts been shown to exist at the time of the trial, they might, in connection with the plaintiffs’ evidence, have authorized a different judgment.
We attach no importance to the fact, that the amoniacal waters and tar are not injurious to health in the immediate vicinity of the gas-works. The chemists who have been examined, testify that the injurious effects are produced by the chemical decomposition which takes place when those products are thrown into stagnant water in quantities sufficiently large to corrupt it.
The judgment is affirmed, with costs.